METROPOLITAN CASUALTY INS. CO. v. CATO.

[74 South. 114, Division A.]

1. INSURANCE. Warranty. Breach. Chronic disease.

A statement in an application for accident insurance that the insured was sound and whole and had never been subject to any chronic disease, even if held to be a warranty, is not shown to be false by evidence that some years prior to the making of such application, insured suffered from temporary facial paralysis, and that six or seven years before he had suffered from malarial poisoning, from which he had recovered, since neither of those was a chronic disease and insured was sound and well at the time the policy was issued.

2. INSURANCE. Accident insurance. Totally disabled.

Under a clause in an accident insurance policy giving a weekly indemnity if the injuries continuously and totally disabled and prevented insured from performing any and every kind of duty pretaining to his occupation, where a plantation manager accidentally broke his hip, as a result of which he became unable to ride horseback, or to attend to his duties daily, and was forced to resign, but did occasionally, when the weather was good, ride in a buggy to a plantation owned by his daughter and give instructions to the foreman and consult with him when the latter came to the house, but was unable to see that his instructions were carried out, or to keep the books regularly, in such case, the disability was total and not partial under another clause providing for only half indemnity if the injury disabled insured from performing some one or more important daily duties pertaining to his occupation, since when insured is prevented by his injury from doing all the substantial acts required of him in his business, he is totally "disabled," notwithstanding the fact that he occasionally, is able to perform some single act connected with his business.

APPEAL from the circuit court of Washington county. HON. FRANK E. EVERETT, Judge.

Suit by William R. Cato against the Metropolitan Insurance Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*L. A. Smith,* for appellant.

Where a policy is issued on faith of an application containing statements, in fact, untrue, there was no meeting of minds of the parties on one of the essential elements of the contract, and, therefore, there was such a mistake as would authorize relief in a court of equity for the cancellation of the policy, says the court in the case of *Pacific Mutual* v. *Glazier,* 150 S. W., 549. There is also the Mississippi case of *Fidelity Mutual Life* v. *Miazza,* 93 Miss., 18, and 423, in which this court held that evidence of the insured, prior to his application for insurance, having suffered from an attack of acute mania was admissable to show misrepresentation as to his physical condition. This case might be parallel to the instant case by substituting "chornic malarial poisoning" or "facial paralysis" for an "acute attack of mania." It does not matter whether appellee was sound when policy was issued, as that was a mere clerical detail, but the point is, that he had imposed on the appellant a concealment and misrepresentation covered up by untrue answers, the truth of which he warranted, in stating that he had never had a chronic disease, while the proof shows that he in fact had chronic malarial poisoning before he applied to appellant for insurance. On page 49 of the record, Dr. Cheek testified that he also had detected the albument, and also that he knew of the paralysis suffered by Mr. Cato. *American Central Insurance Co.* v. *Antrim, et al.,* 38 So. 26.

The assured concealed the previous existence of a chronic disease, and his answer to warranty No. 19, of the application, was neither complete nor true, and as every man is presumed by law to have intended to do that which he actually did do, there can be no escape from the fact that Mr. Cato's application in this regard was a fraudulent representation, and he must abide the consequence because there was in fact one true con-

dition of affairs with reference to his past health, but it was not truthfully reported to the insurance company by the warranties made by Mr. Cato himself and in writing. Warranties on the part of the assured which were made a part of the contract are binding upon him, and if they are false this precludes a recovery on the policy. 1 C. J. 422. Warranties must be literally fulfilled. *Vancleave* v. *Union Casualty Co.,* 82 Mo. App. 668. An insurance company may make immaterial representations warranties. (*Bonewell* v. *North American Accident Insurance Co.,* 160 Mich., 137, 125 N. W., 56), yet no one can deny that materiality essentially and fundamentally of the representations in this case made by Cato, and yet if they had been immaterial, that is if facial paralysis be a trivial disease, its trivality cannot be availed of by the appellee to offset his having concealed it, because his representations are all warranties, regardless of their materiality. However, this court knows of its own knowledge, and hence will take judicial notice, of the fact that chronic malarial poisoning is neither trivial nor immaterial.

Where insured, through no misapprehension or ignorance, signs an accident insurance application, which makes false statements material to the risk, he cannot recover on the policy. 66 So. 218. A party who has been fraudulently betrayed into making a contract may resume possession of his property on returning that which he himself has received. *Duy* v. *Higdon, et al.,* 50 So. 378. The company returned two hundred and seventy-five dollars and received according to the declaration, at page 4, nineteen dollars and fifty-six cents.

The next matter involved in this case is the extent of the disability of the appellee, for the period made in his declaration. There is no contention on the part of the appellant against the truth of the claim of Mr. Cato's original, total disability, but it is earnestly in-

sisted, and contended, that his disability in the period from December 16, 1913, to September 22, 1915, which is the period for which he is suing, and asking twenty-five dollars per week, was neither continuous nor total. This court has never passed on the difference between total and partial disability, nor has total disability, nor partial disability, ever been defined by the supreme court of this state. It is not necessary to define either of them in this case, as the policy contract plainly and unambiguously defines both. The question then was for the jury below to determine which definition in the policy fitted the condition and acts of Mr. Cato. We recognize the rule that courts construe policies of insurance against the insurer as strongly as is compatible with the language of the contract, but the words of a policy must be given meaning which those same words bear in other contracts. So, where it was plain that it was the intention of the insurer by its contract (and the insured is charged with the knowledge of the contents and meaning of the policy) that there should be two classes or grades, of liability, and that each class, or grade, of liability should attach to certain circumstances only as defined by the policy, the courts will maintain the intent and import of the contract. All parties are free to make such contracts as they please so long as no fraud, or deception, or violation of public policy is involved, and it is the duty of the court to construe and enforce contracts, and not to amend, alter, enlarge, or restrict or make them.

Then the question for this court to decide is whether or not, under the proof in this case, there was sufficient evidence to justify the judge in submitting to the jury for its decision the issue of whether or not by the language of the policy Mr. Cato was totally or partially disabled from performing the duties of his particular occupation. It is not a question as to what generally and ordinarily is regarded to be total and partial disability, but simply the meaning of those terms as defined by the parties to

the contract.    Volume 7, page 6791, of Words and Phrases: 25 N. W. 918, 920; 64 Am. St. Rep. 569; *Mutual Insurance Co.* v. *Ingraham,* 34 Miss. 215.

The case of *Hefner* v. *F. & C.* (Texas C. C. A.), 160 S. W. 330, will possibly be quoted by opposing counsel to support their side of this case, because the Texas court construed total disability to mean only substantial disability, but the same court also held in *F. & C.* v. *Getzendanner,* 53 S. W. 858, that it was reversible error to charge that if injury prevented the insured from performing any and every duty essential to his occupation "reasonably as effective" as he would but for the injury, he was totally disabled.

In *Rayburn* v. *Penn Casualty* (N. C. S. C.), 53 S. E. 283, the insured was a section foreman, and returned to work with the same number of hands under him, and at the same salary, as before the accident, and continued under those conditions until the time of the trial; he was held not entitled to recover after he went back to work, though not able to perform all of his duties.

In *Coad* v. *Travelers* (Neb. S. C.), 85 N. W. 558, it was held that where there are different branches of business pertaining to the occupation, the prosecution of one of which might be prevented by an injury, and yet another carried on, the insured was not "prevented from performing any and every duty."

In *McKinley* v. *Bankers* (Iowa S. C.), 75, N. W. 670, it was held that where the insured was disabled eight weeks, during four of which he had been at his place of business and performed light work, though not attending to his regular duties, he was entitled to recover only for four weeks.

In *Spicer* v. *Comms. Mut.* (Dauphin Co. Pa. C. P.) 53 Legal Intelligencer, 209, it was held that the insured could not recover where he was able to, and did transact some parts and some kinds of business pertaining to his occupation, and to some extent attended to all of his

duties. *Foglesong* v. *Modern Brotherhood* (Kan. Cy. C. A.), 97 S. W. 240.

The above cases have mostly to do with the court defining what is total disability, and what falls short of being total disability, and they are of assistance in this case to show what other courts have held to be less than total disability and consequently have held to be partial disability, as being enlightening upon the reasonableness and justness of the definition of what would be partial disability in this case, as agreed upon by the parties in the beginning of their contract, and hence must be taken as having been in contemplation of each of them when the contract was made.

In *Smith* v. *Supreme Lodge,* 62 Kan. 75, 61 Pac. 416, it was said: "He cannot recover under the contract of insurance which fixed the right of one party, and the liability of the other, unless he sustained a total disablement; that is, a complete disablement to perform the business of a druggist." Among the cases cited with approval by the court, in that case are *Saveland* v. *Fidelity, Etc.,* 67 Wis. 174, 30 N. W. 287, 58 Am. Rep. 863, and *Lyon* v. *Railway Pass. Assurance Co.,* 46 Iowa, 631; *Hooper* v. *Accident, Death Insurance Co.,* 5 H. and N. 302, 546, 8 N. Y. Supp. 263.

The occupation of the insured must be considered in determining whether he has been totally disabled from transacting the business thereof. 29 Pac. 1113. The court in Iowa, Massachusetts, Nebraska, Pennsylvania, Wisconsin, and Georgia hold that when the indemnity provided in the policy is as to injuries wholly disabling the insured from transacting any of the duties pertaining to his occupation, if the insured is able to perform some duties there can be no recovery. *McKinley* v. *Bankers' Accident Insurance,* 106 Iowa, 81, 75 N. W. 670; *Ford* v. *United States Mutual Accident Relief Association,* 148 Mass. 153, 19 N. E. 169; *Coad* v. *Travelers Insurance Co.,* 61 Neb. 563, 85 N. W. 558; *Spicer* v. *Commercial Mutual Accident Co.,* 4 Pa. Dist. 271,

16 Pa. Co. Ct. 163; *Saveland* v. *Fidelity Co.*, 67 Wis. 174. 34 N. W. 237. 58 American Rep. 863; *Merniel* v. *Travelers Ins. Co.*, 91 Wis. 329, 64 N. W. 1039; *Williams* v. *Preferred Mutual Accident Association*, 91 Wis. 329, 64 N. W. 1039; *Williams* v. *Preferred Mutual Accident Association*, 91 Ga. 698, 17 S. E. 982. In other words, those courts hold it to be a matter of reason, common sense and human right that partial disability is what in this case the contract itself provides that it shall be.

Inability to do substantially all kinds of accustomed labor is essentially a provision requiring the insured to be totally disabled from following his usual occupation. *Sawyer* v. *United States Casualty Co.*, (Mass.), 8 A. M. L. Ry. N. S. 233. There is no total disability to transact any and every kind of business pertaining to one's occupation where insured, although unable to perform some of his duties, remains able to perform others; and it is not sufficient that he cannot perform his duties as effectively as before the accident. C. J. 464. In *Bylow* v. *Union Casualty & Surety Co.*, 22 Vt. 325, the court held that it is not wholly and continuous disability from performing any and every kind of duty pertaining to his occupation, within the meaning of the accident policy where he was previously employed as lumper in a granite yard, where his duties involved the overseeing of boxing and loading, and it appears that he is still employed by the same firm in superintending the work which he had previously been doing. *Gracy* v. *Peoples Mutual Accident Ins. Association*, 21 Pitts (L. J. N. S.) 25; *United States Mut. Acci. Asso.* v. *Millard*, 43 Ill. App. 148; *Lyon* v. *Pass Assurance Co.*, 46 Iowa, 631; *Hollobough* v. *Peoples Insurance Asso.*, 138 Pa. 595; *Saveland* v. *Fidelity, etc., Co.*, 58 Rep. 863, 16 L. R. A. 446.

Everything that has been said heretofore in this document is an argument against the peremptory instruction which the judge in the court below gave the

113 Miss.—19

jury for the plaintiff. The evidence of the witnesses as to the condition of the health of the appellee, and his own statements as to the duties which he could perform, and the duties which he could not perform, should have gone to the jury as facts susceptible of two constructions, and the jury should have been permitted to pass on the facts. The trial judge should not have prejudged their verdict and usurped their functions in this case, because there is evidence sufficient in the record to have supported a verdict of the jury for the defendant.

It is only where a particular verdict, if rendered could not be permited to stand, that the court may anticipate the result and peremptorily instruct the jury. *Holmes* v. *Simon,* 71 Miss. 245.

If the jury had brought in a verdict for the appellant it would not have been proper for the trial judge to set aside their verdict, or to grant the appellee a new trial, because a new trial will only be granted where the evidence considered with reference to the issue submitted to the jury does not sustain the verdict. *Otey* v. *McAfe,* 38 Miss. 348.

However, we respectfully contend that the verdict is manifestly wrong, in that the peremptory instruction by the trial judge to the jury compelled them to bring in a verdict which does violence to the facts and the truth of the evidence, and is not supported by the evidence of the appellee himself.

*Campbell & Cashin,* for appellee.

The record and the evidence plainly show that the appellee made no warranty or statement whatever in reference to paralysis of any kind, and, consequently, if he had suffered from paralysis seven years ago, that would not constitute either a breach of the warranties, or a misrepresentation.

In addition to that, the evidence shows that the contraction of the facial nerve, generally called "facial paralysis" from which appellee had suffered seven years before that time, is a mere temporary, functional derangement of the sciatic nerve is, no chronic disease, and is of no importance and consequently, was not material or vital in the matter of accepting the application and issuing the policy in this case.

There is no testimony in the record whatever indicating that appellee had ever suffered from any chronic kidney trouble, or disease, and consequently, there was no breach of warranty as to those matters.

No inquiry was made, and no statement was made, in the application, in reference to paralysis or malaria, and, consequently, there was no issue, as to those matters, and nothing for the jury to pass upon, so far as they are concerned.

"If the insurer desires to take advantage of a false statement or concealment regarding the health and physical condition of the insured, the defense must be specially pleaded." 3 Cooley, Briefs on Ins., p. 2124, and authorities there cited, "Where defendant alleges only that the answers of the insured to three specified questions in his medical examination are false, it is not entitled to an instruction authorizing a verdict, if there were any misrepresentations in the examination." 3 Cooley, Briefs on Ins., p. 2143, citing *Wolf* v. *Supreme Lodge K. and L. of H.,* 160 Mo. 675; 61 S. W. 637.

"An instruction that, if the insured answered falsely any of the questions in the application, the policy was void, and held to be properly refused (*Spring* v. *Chautauqua Mut. Life Assn.,* 14 N. Y. Supp. 904; 60 Hun, 581), since the company did not defend upon the ground that all the answers were false and some of them may have been falsely answered, and yet the plaintiff entitled to recover because the company did

not defend upon the ground that such answers were false." 3 Cooley's Briefs on Ins., p. 2143.

The next question discussed by appellant is as to whether appellee's disability is total or partial; and, after asserting that appellee's disability during the period for which he is suing, to-wit: from December 16, 1913, to September 22, 1914, a period of forty weeks, is neither continuous nor total. Appellant says: "This court has never passed on the difference between total and partial disability, nor has total disability, nor partial disability, ever been defined either of them in this case, as the policy contract plainly and unambiguously defines both."

This would seem to indicate that, in the opinion of counsel for appellant, the question is too plain for argument. Nevertheless, he devotes several pages of his brief to this question. Therefore, we feel justified in asking the court to see whether the testimony does not show that, during the period mentioned, Mr. Cato was totally disabled, within the meaning of the language, used in clause two of the policies sued on, construed liberally in favor of the insurer, and as the courts of this county have usually construed such provisions, and not literally, and most strongly against the insured, as the appellant would have it construed.

When the insured, a plantation manager, is so injured that he can no longer superintend and oversee the plantation, and is compelled to give up his business, because he is physically disabled and prevented by accidental injury from performing the duties pertaining to that business, is he not totally disabled? Or is it necessary that the accident shall so disable the insured as to prevent him from performing any act, of any kind, before it can be said that he is totally disabled? If so, then the policy is a mere trap to secure premiums without affording the insured any chance for indemnity for injury sustained by accident, disabling them from performing the duties pertaining to their business. 5

Elliot on Contracts, section 4398; *Lobdill* v. *Laboring Men's Ass'n,* 69 Minn. 14, 71 N. W. 696; 38 L. R. A. 537; 65 Am. St. Rep. 542; *Wolcott* v. *United Life & C. Ass'n,* 55 Hun, (N. Y.), 98; *Young* v. *Travelers Ins. Co.,* 80 Me. 244.

There is no conflict, whatever, in the testimony as to the extent and character of the disability under which Mr. Cato is laboring. Whether this disability was total, within the meaning of the language of the policy, properly construed, was then a question of law for the court, and not a question of fact for the jury, and, therefore, the peremptory instruction was proper.

For a full discussion as to what constitutes disability within the meaning of accident insurance policies, we refer the court to the following: *Turner* v. *Fidelity, etc., Co.,* 38 L. R. A. 529, and note; *Keith* v. *Chicago, B. & Q. R. Co.,* 23 L. R. A. (N. S.) and note; *Gordon* v. *U. S. Cas. Co.* (Tenn. Ch. App.), 54 S. W. 98, 23 L. R. A. (N. S.) 352; *Beach* v. *Supreme Tent K. M.,* 177 N. Y. 100, 69 N. E. 281; *U. S. Cas. Company* v. *Hanson,* 20 Colo. App. 393, 79 Pac. 176; *Mut. Ben. Ass'n* v. *Nancarrow,* 18 Colo. App. 274, 71 Pac. 423; *Wall* v. *Continental Cas. Co.,* 11 Mo. App. 504, 86 S. W. 491; *James* v. *U. S. Cas. Co.,* 113 Mo. App. 622, 88 S. W. 125; *Commercial Travelers' Mut. Acci. Asso.* v. *Stringsteen,* 23 Ind. App. 657, 55 N. E. 673; *Foglesong* v. *Modern Brotherhood,* 121 Mo. App. 548, 97 S. W. 240; *Thayer* v. *Standard Life & Acc. Ins. Co.,* 68 N. H. 577, 41 Atl. 182; *Order of United Travelers* v. *Barnes,* 72 Kan. 309, 82 Pac. 1099; 7 A & F. Ann. Cas., 809; *Foglesong* v. *Modern Brotherhood,* 212 Mo. App. 548, 97 S. W. 240; *Wall* v. *Continental Casualty Co.,* 111 Mo. App. 504, 86 S. W. 491; *Industrial Mut. Indemnity Co.* v. *Hawkins* (Ark.), 127 S. W. 457, 29 L. R. A. (N. S.) 645, and note; *Brotherhood of Locomotive Firemen & Engineers* v. *Aday* (Ark.), 134 S. W. 928, 34 L. R. A. (N. S.) 126; Kerr, Ins., section 385, 386, 4 Joyce, Ins., section 3031.

Total disability is necessarily a relative matter and must depend chiefly on the peculiar circumstances of each case. It must depend chiefly on the peculiar circumstances of each case. It must dep     largely upon the occupation and employment and ca     lities of the person injured.''

If this is not correct and the contention of appellant is correct, and the court shall so decide, then the effect will be to reduce all such contracts of accident insurance as the one involved in this case to mere nullities, and to make them instruments for extracting premiums from policy holders, without creating any liability on the part of the insurers.

SYKES, J., delivered the opinion of the court.

William R. Cato instituted suit against the Metropolitan Casualty Insurance Company of New York in the circuit court of Washington county to recover accident benefits for a certain stated period as provided in a policy of insurance issued by the appellant to appellee. This insurance policy provides for the payment to insured of twenty-five dollars a week while insured is continuously and wholly disabled from performing any and every kind of duty pertaining to his occupation. Clause 3 of said policy provides for a payment of twelve dollars and fifty cents a week for a period, not exceeding fifty-two weeks if the insured is disabled from performing some one or more important daily duty or duties pertaining to his occupation. During the life of this policy Mr. Cato accidentally fractured his right hip, from which injury he never entirely recovered The insurance company under this policy paid Mr. Cato the sum of two hundred dollars and paid his doctor's bill of seventy-five dollars. The policy provides that the weekly indemnity shall be paid at the end of each eight weeks if requested by the insured. Mr. Cato requested that his indemnity be paid in this

manner. The insurance company, however, declined to pay him any further or other sum of money than the two hundred and seventy-five dollars. This suit is for the second, third, fourth, fifth, and sixth eight-week periods of disability, each period amounting to two hundred dollars indemnity for total disability, or a total amount of one thousand dollars with interest, said period expiring September 22, 1914. The defendant pleaded the general issue, and a special plea setting up the fact that in his application for insurance plaintiff warranted as follows:

" 'I am sound and whole, mentally and physically, I am neither deaf, deformed, nor suffer any impairment of vision of either eye, nor have I ever been subject to fits, epilepsy, vertigo, somnambulism, or any chronic disease, except (no exceptions)'—when in truth and in fact the plaintiff, prior to the application for and the issuance of said policy, had a stroke of paralysis, and at divers times prior thereto had chronic kidney trouble and had been informed by physicians that he had Bright's disease." A demurrer was overruled to this special plea, whereupon issue was taken upon same. There was also a special plea of a false warranty relating to the income of plaintiff, upon which issue was joined. The testimony did not sustain either of these special pleas. The facts in the case necessary to be mentioned by us are as follows: In his application for insurance Mr. Cato stated that his occupation was a cotton planter, and that his duties were "superintending only." He also said that he was sound and well, mentally and physically, nor had he ever been subject to any chronic disease. This policy was issued to the appellee on January 13, 1913. Appellee fractured his hip on the 21st day of October, 1913. The testimony material to the issues in brief is as follows: The appellee testified that at the time of his injury he was a plantation manager employed to manage the place of McCutchen Bros., which had about eight hundred acres in cultivation, at

a salary of one thousand dollars a year and certain perquisites unnecessary to be noticed; that since his injury he has been unable to do anything and had to resign his position with his employers; that he has been able to write a little and ride around in a buggy a little since; that the principal reason he has not been able to perform any of the duties of a plantation manager is because he has been unable to ride horseback. He was confined to his house on account of the injury until some time in April, 1914, at which time he prevailed upon his daughter to have him put into a buggy and driven out to see some cotton planted on a two hundred-acre plantation which was rented by his daughters. He was not able to be out again for about a month. Some time in May, under the advice of his physician, he was driven around in a buggy by some of his family, and at a later period was able to drive himself. During the entire time, however, he was never able to be out every day, but in pretty weather he was sometimes able to be out once a week, and sometimes oftener. His hip pained him practically all of the time. He testified to the duties of a plantation manager or superintendent, and among other duties said it was necessary for him to keep the books of the plantation. Counsel for appellant asked him if he could not keep those books at the time of the trial, to which he replied that he could do a little of it. He was also asked if a part of his duties as Superintendent was not to direct the hands as to how to work, and if he could not at least direct those on the place of his daughters that he could see from the road or from the turn rows where he could go in his buggy, to which he replied in the affirmative. The testimony further showed that Mr. Cato was given by his daughters a part of the proceeds of the crop raised on the place rented by them, which generally amounted to about five hundred dollars a year; that this was a gratuity on their part. On this place they had a negro foreman who before the accident

was under the control of the appellee. After the accident this foreman would come to the house and advise with Mr. Cato while he was confined therein as to the crop, and Mr. Cato would also direct and advise him as best he could when he was able to ride out in a buggy to look at the crop. The appellee was never able to be out in his buggy every day. On damp or bad days he suffered severely with his hip and was confined to the house. He was never able to stay on the plantation all day and actually see to the proper management of it. He was not able daily to keep the books or was never able daily to perform any of the substantial duties of a plantation superintendent or manager. The testimony further showed that some years prior to the taking out of the policy herein sued on plaintiff suffered from facial paralysis, which is a disease of the sciatic nerve and which was temporary. His physician also testified that at one time, about six or seven years before the policy was issued, he suffered with malaria poisoning and may have had a trace of albumen in his urine, but that these had passed away. Clauses 2 and 3 in the policy are as follows:

"Clause 2. If such injuries shall not result as specified in clause 1, but, directly, solely, exclusively, and independently of all other causes, shall, within two weeks from the date of the accident, continuously and wholly disable and prevent the insured from performing any and every kind of duty pertaining to his occupation, the company will pay the insured the weekly indemnity above specified for the entire period of such total disability.

"Clause 3. If such injuries shall not result as specified in clause 1, but, directly, solely, exclusively, and independently of all other causes, shall, within two weeks from the date of the accident or immediately following total disablement, continuously disable and prevent the insured from performing some one or more important daily duty or duties pertaining to his occu-

pation, the company will pay the insured one-half of the weekly indemnity above specified for the period of such partial disablement, not exceeding fifty-two weeks.''

It is also contended that under the policy the answers of appellee in his application for insurance are warranties. Conceding that they are for the purpose of this decision, there is no testimony whatever in the record of any breach of these warranties. There is no testimony that at the time of the taking out of this insurance policy the appellee was not sound and whole. There is no testimony in the record that he was ever subject to any chronic disease. The mere fact that he may have suffered from facial paralysis or malaria would not avoid the policy. He was sound and well at the time the policy was issued. The facial paralysis, malarial poisoning, and trace of albumen in his urine had disappeared years before. The testimony shows that they were all temporary ailments from which a complete recovery was had; such ailments do not constitute a state of ever having been subject to any chronic disease. Joyce on Insurance, section 1849; *Cady* v. *Fidelity & Casualty Ins. Co.,* 134 Wis. 322, 113 N. W. 967, 17 L. R. A. (N. S.) 260.

At the conclusion of all the testimony the court instructed the jury to return a verdict for the plaintiff for the total amount sued for. This amount was based upon a total disability during the period stated in the declaration.

The appellant contends that Mr. Cato was not totally disabled, but only partially disabled, and his recovery, if any, would be governed by clause 3, above quoted. Clause 3 provides that, if the injuries ''continuously disable and prevent the insured from performing some one or more important daily duty or duties,'' etc., or, in other words, if the insured is able to perform some one or more important daily duty or duties, then his disability would only be partial. It is the contention

of appellant that clause 3 explains and modifies clause 2. He also contends that in the reported cases on casualty insurance in the different states none of the policies there in question contains a clause similar to clause 3 in this policy. It is contended that, if the appellee was able at any time to do any work pertaining to the important duties of plantation manager, then his disability would be reduced from total to partial. As we understand his contention, if Mr. Cato could do any work whatever on any plantation books, say for one hour out of every two weeks, then his disability would be partial, or if he could be driven in his buggy to the plantation rented by his daughters and remain there for a short time one day out of one or two weeks, and while there give some instructions to the hands, then his disability will be reduced from total to partial.

In 5 Elliott on Contracts, section 4398, the author, in discussing policies of this character, has the following to say:

"The cases which have placed a construction upon the term 'total disability' might sometimes seem to be divided into two classes, *viz.*, those which construe it liberally in favor of the insured, and those which construe it strictly against him. Any apparent conflict in the decisions may, however, be mostly reconciled in view of differences in the language of the policies, and of the different occupations under which the parties were insured. Of course, if the insured is so injured that he cannot do anything, it is a case of total disability. But the decisions go much further, and it is generally held that, if the insured is so injured that he cannot perform such work as he was engaged in at the time, or similar or remunerative work, it is a case of total disability, even though he may be able to do some slight act."

In the case of *Wolcott* v. *United Life, etc., Co.,* 55 Hun, 98, 8 N. Y. Supp. 263, the court says:

"Total disability must, from the necessity of the case, be a relative matter, and must depend largely upon the occupation and employment in which the party insured is engaged."

"One who labors with his hands might be so disabled by a severe injury to one hand as not to be able to labor at all at his usual occupation, whereas a merchant or a professional man might by the same injury be only disabled from transacting some kinds of business pertaining to his occupation. . . . There are a few propositions applicable to the construction of the policy under consideration which, under the evidence, are decisive of this case. The first is that total disability does not mean absolute physical inability on the part of the insured to transact any kind of business pertaining to his occupation. It is sufficient if his injuries were of such a character that common care and prudence required him to desist from the transaction of any such business so long as it was reasonably necessary to effectuate a cure. This was a duty which he owed to the insurer as well as to himself. *Young* v. *Travelers' Ins. Co.*, 80 Me. 244 (13 Atl. 896). The second is that under the particular terms of this policy, to wit, 'from transacting any and every kind of business pertaining to the occupation above stated' (merchant), inability to perform some kinds of business pertaining to that occupation would not constitute total disability within the meaning of the policy. . . . But, fourth, the mere fact that he might be able, with due regard to his health, to occasionally perform some single and trivial act connected with some kind of business pertaining to his occupation as a merchant, would not render his disability partial instead of total, provided he was unable substantially or to some material extent to transact any kind of business pertaining to such occupation." *Lobdill* v. *Laboring Men's, etc., Ass'n*, 69 Minn. 14, 71 N. W. 696, 38 L. R. A. 537, 65 Am. St. Rep. 542.

The above quotation is pecularily apt to the case at bar, because, taken most strongly for the appellant, the appellee here was only able "to occasionally perform some single and trivial act connected with some kind of business pertaining to his occupation," as superintendent of a plantation. He was never able to perform any one or more of the important daily duties pertaining to his occupation as a plantation manager. Being able to direct the hands. upon a plantation without the ability to see that these directions are properly followed amounts to nothing and could not be considered an important duty. The important part, the *sine qua non,* is to see that these directions are properly executed. Being able occasionally to work on plantation books is not being able to perform one of the important daily duties mentioned in clause 3, but is a mere incident of the employment. The testimony shows that in order to be able to transact the important duties of managing a plantation the manager must be able to ride. horseback and go all over the plantation. He must be with the hands from daylight until dark. *Turner* v. *Fidelity, etc., Co.,* 112 Mich. 425, 70 N. W. 898, 38 L. R. A. 529, and note, 67 Am. St. Rep. 428; *Keith* v. *Chicago, etc., Co.,* 82 Neb. 12, 116 N. W. 957, 23 L. R. A. (N. S.) 352, and note, 130 Am. St. Rep. 655. In the note to the latter case the rule is stated that:

"Ability to do some act will not prevent recovery. Thus it is held that the 'total disability' contemplated by a benefit certificate does not mean a state of absolute helplessness, and the fact that assured walked to his physician' office was held not to prevent recovery where he was entirely incapacitated for work or business." *Mutual Benefit Ass'n* v. *Nancarrow,* 18 Colo. App. 274, 71 Pac. 423.

So the fact that a farmer is able to direct his business, and do some of the work himself, will not prevent his recovering as for total disability if he is wholly disabled from doing all the substantial and material acts neces-

sary to be done. *Foglesong* v. *Modern Brotherhood,* 121 Mo. App. 548, 97 S. W. 240; *Thayer* v. *Standard Life, etc., Co.,* 68 N. H. 577, 41 Atl. 182. In the latter case the court has the following to say:

"As long as one is in full possession of his mental faculties, he is capable of transacting some parts of his business, whatever it may be, although he is incapable of physical action. If the words 'wholly disable him from transacting any and every kind of business pertaining to the occupation under which he is insured' were to be construed literally, the defendants would be liable in no case unless, by the accident, the insured should lose his life or his reason. . . . It is certain that neither party intended such a result."

See, also, the case of *Industrial Mutual Indemnity Co.* v. *Hawkins,* 94 Ark. 417, 127 S. W. 457, 29 L. R. A. (N. S.) 635, and note, 21 Ann. Cas. 1029; *Brotherhood of Locomotive Firemen & Engineers* v. *Aday,* 97 Ark. 425, 134 S. W. 928, 34 L. R. A. (N. S.) 126. The correct rule, and the rule announced by the great weight of authority in this country, is well stated in 1 Corpus Juris, p. 464, as follows:

"But when the insured is prevented by his injury from doing all the substantial acts required of him in his business, he is within such a provision of the policy, notwithstanding the fact that he occasionally is able to perform some single act connected with some kind of business pertaining to his occupation."

Practically all of the authorities bearing upon this matter are cited in the able briefs of counsel for appellant and appellee, and we will not further quote from them. In conclusion we will say that the plaintiff was never able to perform any one or more important daily duty as superintendent of a plantation. It therefore follows that the peremptory instruction was correct, and the case is affirmed.

*Affirmed.*