183 So.2d 917 (1966)
BILL WILLIAMS FEED SERVICE and Western Casualty & Surety Company
v.
James W. MANGUM.
No. 43827.
Supreme Court of Mississippi.
March 14, 1966.
*918 Cox, Dunn & Clark, Wm. H. Cox, Jr., Jackson, for appellants.
George B. Grubbs, Mendenhall, for appellee.
GILLESPIE, Presiding Justice:
This case involves the application of the 1960 amendment to Mississippi Code Annotated section 6998-04 (Supp. 1964), which requires the Workmen's Compensation Commission to reduce compensation that would otherwise be paid by that proportion which a pre-existing handicap, disease or lesion contributes to the production of the results following injury. The medical evidence conclusively showed that claimant's pre-existing handicap and diseases contributed to the results following injury to claimant's leg, and the judgment of the circuit court affirming the order of the commission, awarding compensation for total loss of use of leg without applying the apportionment statute, is reversed.
Claimant was employed by Bill Williams Feed Service and operated a feed mill mounted on a truck. Five days a week he operated the feed mill over scheduled routes doing custom grinding and mixing of livestock feed. In addition to operating the truck, his duties included climbing a steel ladder to reach an upper part of the mill, carrying sacks of feed weighing from fifty to one hundred pounds, and other duties. He was an active man and engaged in hunting, fishing and other outdoor activity. He also managed a small farm and owned and operated a feed store. He employed a manager to run the feed store.
At the time of his injury claimant was about fifty-seven years old. He had no previous disability. His height was six feet one inch, and he weighed 265 pounds.
He sustained the injury involved in this case when he was climbing the steel ladder to check the mixing operation of the feed mill. The ladder was wet and when claimant stepped on the second step, his right foot slipped and the weight of his body caught on the side of his right leg and knee. Claimant testified that "* * * it stung, that was all, it was very, very slight, about like a wasp sting." He testified further that he never gave it a thought and kept right on working the rest of the day. By that evening, which was Friday, the place was sore, but he declined to see a doctor because he did not think it would amount to anything. By Sunday he could not walk, and on Monday he went to see Dr. Charles Allen. Claimant was hospitalized several times and underwent a "vein stripping" operation for thrombo-phlebitis. He experienced a great deal of pain and had a severe reaction to a drug injected in the vein as a part of the treatment. The injury occurred on July 20, 1963. He was treated by Dr. Allen in the hospital from July 22 through July 26, 1963. Claimant was then referred to Dr. Rush Netterville and was hospitalized from September 17 through September 25, 1963, during which time the vein surgery was performed by Dr. Netterville. He was again hospitalized from October 16 through October 21, 1963, for treatment of severe reaction to drugs injected in the veins of his leg. Claimant *919 received no treatment after February 17, 1964, until the hearing, which was concluded in December 1964.
Since he was discharged by the physicians, claimant has operated his feed store where he stays a greater majority of the time, but requires the services of an employee designated as the operator. Claimant is unable to lift feed, but confines his activities to weighing and writing tickets. He walks with the aid of a cane and has a chair or stool located at each place where he works so that he can sit. He also manages his small farm. He is unable to operate the portable feed truck because of the difficulty in walking and inability to lift sacks of feed and ingredients.
Dr. Charles Allen, under whose general care claimant received all his treatment except the operation, which was performed by Dr. Netterville, testified that claimant had a fifty per cent permanent partial disability of the lower right extremity, or leg. He further stated that claimant's pre-existing conditions and diseases were as follows: obesity, arthritis, varicose veins and spurs in each knee joint, all of which contributed to claimant's permanent disability. Dr. Allen testified in detail why and how these pre-existing factors contributed to claimant's permanent partial disability. He stated that his knee, a source of a considerable part of his disability, would have become symptomatic in a course of time, and that in more than ninety-five per cent of cases of phlebitis the patient had pre-existing varicose veins. He also stated that immobility from the surgery and treatment of the phlebitis caused the pre-existing condition of his knee to become a disabling factor. He stated the disability of fifty per cent loss of use of the leg was based on "four or five" factors, meaning the injury, obesity, arthritis, spurs and varicose veins. He stated that one-fifth of claimant's functional disability to his leg was a direct sequela of the treatment, illness, the vein operation, and the reaction from injections, and the other four-fifths was a result of the aggravation of the existing disease processes.
Dr. W.B. Thompson, orthopedic surgeon, examined claimant on April 23, 1964, for the purpose of evaluating his disability. He was of the opinion claimant sustained a five per cent disability from the injury, not taking into account any disability caused by pre-existing conditions.
Dr. Rush Netterville was of the opinion that claimant had a five per cent disability to the right leg as a result of the varicose veins, phlebitis, vein stripping operation and drug reaction; that his pre-existing conditions were material factors in his present complaints.
Dr. J.E. Holder, orthopedic surgeon, examined claimant on September 11, 1964, for orthopedic evaluation at the request of the attorney-referee. He found claimant had some trouble in his back which he attributed to the fact that claimant had to use a cane in walking, change of gait, and degenerative changes that he had in his back already. He stated that claimant had a twenty-five per cent disability to the body as a whole. On further questioning, he stated that he estimated claimant's disability as being forty per cent of the use of the right leg. He also stated that as to some types of labor claimant was one hundred per cent disabled. Dr. Holder considered that all of claimant's disability was directly related to his injury, but he did not comment on whether claimant's pre-existing diseases contributed to the results following injury.
The attorney-referee awarded claimant compensation for forty per cent permanent partial disability to the right leg. The commission modified this order by finding that the forty per cent permanent partial disability to his right leg prohibited claimant from doing the substantial acts of his employment and awarded him compensation for total loss of use of his leg.
*920 The second paragraph of Mississippi Code Annotated section 6998-04 (Supp. 1964) was added by an amendment in 1960. Laws of 1960, Ch. 277. It is as follows:
Where a pre-existing physical handicap, disease or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such pre-existing physical handicap, disease or lesion contributed to the production of the results following the injury.
The burden of proof is upon the employer to prove by a preponderance of the evidence all of the factors required by the apportionment statute. These factors are the existence of a pre-existing handicap, disease or lesion, which is a material contributing factor in the results following injury; and these factors must be shown by medical findings. Taitel & Son v. Twiner. 247 Miss. 785, 157 So.2d 44 (1963). An apportionment is in the nature of a defense which the employer must plead, or it will be waived. Mississippi Federated Cooperatives v. Roberts, 248 Miss. 732, 160 So.2d 922 (1964). When all these conditions are shown the amount of the reduction is left largely to the discretion of the commission, for the exact amount of contribution by the pre-existing handicap, disease or lesion is ordinarily not susceptible of proof. Dillingham Mfg. Co. v. Upton, 252 Miss. 281, 172 So.2d 766 (1965); Southeastern Constr. Co. v. Dependent of Dodson, 247 Miss. 1, 153 So.2d 276 (1963).
In this case all the factors required by the apportionment statute are present. The employer filed the proper pleading and the medical evidence showed conclusively that the pre-existing handicap and diseases were material factors in the results following injury. The injury itself was a minor one.
We have carefully considered the testimony of Dr. Holder to determine if it would support a finding that the pre-existing handicap and diseases were not material contributing factors in the results following injury, and we find his testimony harmonizes and is not in conflict with the other medical testimony which shows the existence of the factors entitling employer to the benefit of the apportionment statute. His testimony that all of claimant's disability was directly related to the injury is correct but is not in conflict with that which showed the pre-existing handicap and diseases were contributing factors. Everything that followed the injury was directly related to the injury, and except for the apportionment statute, claimant would be entitled to an award for total loss of use of his leg. The injury triggered the whole train of events that followed, but it was one of the combined factors, as Dr. Allen stated.
The apportionment statute is mandatory when the employer pleads it and meets the burden of proof. We are of the opinion that the case should be reversed and remanded to the commission for a determination of the amount the compensation should be reduced.
Appellant contends that there is no substantial evidence to support a finding that claimant had a one hundred per cent loss of use of his leg. The percentage of functional disability estimated by the physicians ranged from five per cent to fifty per cent. After claimant reached maximum recovery, he was able to walk with a cane and perform part of the duties of operating a feed store. We are of the opinion that the commission's award was based on substantial evidence. Claimant is unable to do the substantial acts of the employment in which he was engaged when injured. The estimates of the medical experts of the percentage of functional loss of use is one factor in determining the degree of loss of use. The degree of loss of use is a matter for determination *921 by the commission based on all the evidence. Reed Constr. Co. v. Martin, 215 Miss. 472, 61 So.2d 300, 63 So.2d 528 (1952).
The award of the commission is affirmed as to the degree of loss of use and reversed as to the amount of compensation, and remanded to the commission for the application of the apportionment statute.
Affirmed in part and reversed in part and remanded.
BRADY, PATTERSON, SMITH and ROBERTSON, JJ., concur.