464 So.2d 510 (1985)
PIGGLY WIGGLY, d/b/a Dixieland Foods, et al.
v.
Elsie M. HOUSTON.
No. 55423.
Supreme Court of Mississippi.
February 20, 1985.
*511 Eugene M. Harlow, Gibbes, Graves, Mullins, Bullock & Ferris, Laurel, for appellant.
J. Ronald Parrish, E.K. Collins, Laurel, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Jones County wherein the circuit judge affirmed an order of the full Workmen's Compensation Commission which found as a fact that Mrs. Elsie M. Houston suffered 100% industrial disability of her right leg. The order of the full Commission had reversed a finding by the Administrative Law Judge that the claimant only had a 40% disability of her right leg. At issue on this appeal is whether the circuit court was correct in affirming the findings of the full Workmen's Compensation Commission. We conclude that the circuit court was correct.
Mrs. Houston testified that on August 15, 1980, she was employed in the Piggly Wiggly delicatessen. She had been working there since July, 1978. As part of Mrs. Houston's job, she was required to go to the back of the store and load grocery carts full of boxes or cans of food and bring them to the front of the store where the delicatessen was located. These boxes weighed between five to thirty pounds. Mrs. Houston stated that her job required her to stand all day. She used her leg to steady herself when lifting heavy boxes. Her job required that she squat, stoop, and get down on her knees.
On the day of her injury, Mrs. Houston was going to the back of the store to pick up some delicatessen supplies when she slipped on a lettuce leaf in the produce section. Mrs. Houston was taken to the emergency room at Community Hospital where she saw Dr. Turnbull. She was diagnosed as having a fractured patella (kneecap). Surgery was performed later that day.
Mrs. Houston was required to stay in the hospital for a week. After being released, she saw Dr. Attix for the swelling of her knee, leg and ankle. He advised that she should have her kneecap removed. He then referred her back to Dr. Turnbull. Mrs. Houston stated that since that time she felt her knee had changed for the worse. She complained that her ankle is always swollen and that her leg and knee swell severely.
Mrs. Houston also complained of pain in her hip when walking. She stated that she had never had this type of pain prior to her injury. She also denied that she had experienced any problem with her ankles, knees or legs prior to the injury. Mrs. Houston complained that her injuries have left her unable to walk, bend or stoop.
Mrs. Houston never had any training for a "sit down job." For the last twenty years of Mrs. Houston's employment history, she has had jobs involving lifting. After her injury she looked for work at three different department stores and a restaurant but was unable to find a job. She stated that she realized that had she gotten one of those jobs she would have been required to stand and lift but that her need to work overwhelmed the pain. She testified that she did not feel up to a job but that she would have given it a try had she been given the opportunity. This was in spite of her assertion that since the injury, if she tried to lift something she was "just about to hit the floor."
The parties stipulated that Mrs. Houston's physician, Dr. Turnbull, would testify that she suffered a 20% permanent partial disability of her right leg as a result of an articular fracture of her patella. The parties further stipulated that on September 22, 1981, Mrs. Houston reached maximum medical recovery.
Based on her testimony and the stipulation of the parties, the administrative law judge found that Mrs. Houston had suffered a total of 40% disability. By a vote of two to one, the Workmen's Compensation Commission reversed the administrative law judge and found that Mrs. Houston *512 was suffering a 100% industrial disability of her right leg. The circuit court affirmed the findings of the Workmen's Compensation Commission.
The standard of review when this Court considers findings of fact of the Workmen's Compensation Commission is that of substantial evidence. In other words, if there is substantial evidence to support the findings of the Workmen's Compensation Commission this Court will not disturb those findings on appeal. Johnson v. Ferguson, 435 So.2d 1191 (Miss. 1983); Goasa & Son v. Goasa, 208 So.2d 575 (Miss. 1968).
The crux of the dispute in the instant case lies in the difference between the finding of the administrative law judge and that of the Workmen's Compensation Commission. Piggly Wiggly argues that because the parties stipulated that Dr. Turnbull's testimony would be that Mrs. Houston was suffering only a 20% physical disability, the Commission's finding that she was 100% disabled was not supported by substantial evidence. This argument fails to consider the opinions of this Court which have held that the loss of wage earning capacity is to be determined from the evidence as a whole and is not limited strictly to the percentage of physical or medical disability. See Universal Manufacturing Co. v. Barlow, 260 So.2d 827 (Miss. 1972); Futorian Stratford Furniture Co. v. Davis, 185 So.2d 665 (Miss. 1966); M.T. Reed Construction Co. v. Martin, 215 Miss. 472, 61 So.2d 300 (1952). In those cases this Court has continued to recognize a distinction between functional disability and industrial disability. This distinction is at the core of the issues involved in this case. Noted Workmen's Compensation authority Vardaman Dunn had this to say about the distinction between functional and industrial disability:
The question in these cases is the degree of loss of use of the member for wage earning purposes, and this issue is for determination from the evidence as a whole, including medical estimates related either to the functional or industrial loss and the testimony of the claimant and other lay witnesses as to the effect of the injury upon the employee's ability to perform the duties required of him in his usual employment. In this connection, a partial loss of functional use may result in total disability, and to reach this result it is not necessary that the employee be wholly incapacitated to perform any duty incident to his usual employment or business; but if he is prevented by his injury from doing the substantial acts required of him in his usual occupation, or if his resulting condition is such that common care and prudence require that he cease work, he is totally disabled within the meaning of the statute.
* * * * * *
Indeed, more estimates of the medical or functional loss may have little value when compared with lay testimony by the claimant that he suffers pain when attempting use of the member and that he has tried to work and is unable to perform the usual duties of his customary employment, and this is especially true when such testimony is corroborated by persons who have observed the claimant's attempt to work or who have refused to employ the claimant because of his apparent affliction. (footnotes omitted)
Dunn, Mississippi Workmen's Compensation 3rd Ed. § 86, p. 102, 103.
The M.T. Reed Construction Co. v. Martin case is striking in its factual similarity to the instant case. There one physician testified that Martin had a 20% disability while another refused to estimate the percentage of disability because, in his opinion, Martin's pain would remain throughout his life. The attorney-referee found that Martin suffered from a permanent and total loss of use of his right leg. The full commission amended the award by reducing permanent disability to 20%. The circuit court then reversed the Commission and reinstated the award of the attorney referee. On appeal to this Court the circuit court's ruling was affirmed. The Court had this to say about the distinction between functional and industrial disability:

*513 When the whole evidence is considered, it leads inescapably to the conclusion that Martin, by reason of his injury, is prevented from doing the substantial acts required of him as a carpenter. Moreover, due to his advanced age and physical condition, it appears most unlikely that he will be able to pursue any other gainful employment.
The opinion in the Meeks [Locomotive Engineers Mut. L. & A. Ins. Co. v. Meeks, 157 Miss. 97, 127 So. 699 (1930)] case, supra, cited Metropolitan Casualty Ins. Company v. Cato, 113 Miss. 283, 74 So. 114, and observed that the Court there held that one may be "totally disabled, notwithstanding the fact that he occasionally is able to perform some single act connected with his business." It also cited Equitable Life Assurance Society v. Serio, 155 Miss. 515, 124 So. 485, and observed that it was there held that "recovery under insurance policy by reason of total and permanent disability does not require a condition of complete helplessness, nor such an entire physical or mental inability in respect to pursuit of an occupation or employment that the insured can do absolutely nothing; ...".
In the recent case of Lipnick v. New York Life Insurance Company, 211 Miss. 833, 52 So.2d 916, on the question of what is necessary to constitute total and permanent disability, this Court cited Mutual Benefit Health & Accident Association v. Mathis, 169 Miss. 187, 142 So. 494, and quoted with approval therefrom as follows: "in order for one to be totally disabled within the meaning of a health or accident insurance policy, it is not necessary that he be wholly incapacitated to perform any duty incident to his usual employment or business, but, if the insured is prevented by his injury or illness from doing the substantial acts required of him in his business, or if his physical condition is such that, in order to effect a cure or prolongation of life, common care and prudence require that he cease all work, he is totally disabled within the meaning of such policies." (Emphasis supplied.)
215 Miss. at 477, 478, 61 So.2d at 302.
We are of the opinion that the circuit court was correct that there was substantial evidence to support the Commission's finding that Mrs. Houston suffered 100% industrial disability. She testified that she was unable to perform her job or to stand for very long. She continued to suffer swelling and pain and was unable to bend or stoop very well. Furthermore, Mrs. Houston was unable to lift boxes or cans of the size and weight required by her job. It was undisputed that Mrs. Houston has attempted to find other employment for which she was suited but that she was unable to do so. Based on her testimony, we conclude that she was willing to work but was physically unable to perform the substantial acts required of her in her usual employment.
Based on all of the foregoing, the decision of the circuit court affirming the decision of the full Workmen's Compensation Commission is hereby affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.