# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 2000-WC-01411-COA

**BRENDA WEATHERSPOON** **APPELLANT**

**v.**

**CROFT METALS, INC., AND LIBERTY MUTUAL INSURANCE COMPANY** **APPELLEES**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 08/11/2000 |
| TRIAL JUDGE: | HON. MIKE SMITH |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LAMPTON O. WILLIAMS JR. |
| ATTORNEY FOR APPELLEES: | JOHN S. GONZALEZ |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| TRIAL COURT DISPOSITION: | AFFIRMED DECISION OF THE COMMISSION REDUCING CLAIMANT'S BENEFIT AWARD |
| DISPOSITION: | REVERSED AND REMANDED - 01/22/2002 |
| MOTION FOR REHEARING FILED: | 2/20/2002; denied 6/4/2002 |
| CERTIORARI FILED: | 6/17/2002; granted 9/26/2002 |
| MANDATE ISSUED: | |

EN BANC

BRANTLEY, J, FOR THE COURT:

¶1. The case now before us requires this Court to confront, once again, the issue of the proper determination of compensation for a permanent injury to a scheduled member when the contention is that the injury has caused an industrial disability that exceeds the functional disability shown by the medical evidence. The claimant in this case, Brenda Weatherspoon, contends that the Mississippi Workers' Compensation Commission erred as a matter of law when it considered evidence of her employability in fields unrelated to her injury-causing job to determine that she did not suffer an industrial disability that exceeded the medical disability assigned by her treating physician. We reverse and remand this case to the Commission for further proceedings consistent with this opinion.

## FACTS

¶2. Weatherspoon was employed at Croft Metal on November 3, 1994, when she suffered a repetitive-motion injury to both hands that was diagnosed as carpal tunnel syndrome. There is no dispute that her injuries were work-related. Her condition was treated by surgical procedures to both wrists. Her treating physician concluded that, after reaching maximum medical improvement, Weatherspoon had suffered a ten percent permanent medical impairment to both of her upper extremities. In addition to his assessment of

permanent functional disability, the physician advised Weatherspoon to avoid activities requiring prolonged periods of repetitive movements with her hands that included vigorous gripping or pushing activities. At the time of her injury, Weatherspoon had been employed in the assembly of screens. Her specific duties involved repetitive insertion of vinyl strips used to hold the screening material in the frames. There is no dispute that Weatherspoon's treating physician's restrictions on her physical activity prevented her from returning to the same duties at Croft Metals.

¶3. On this evidence, the administrative judge concluded that the injuries to Weatherspoon's right arm, which was her dominant arm, had permanently ended her ability to perform the substantial acts of her usual employment. The administrative judge concluded that Weatherspoon had suffered a one hundred permanent industrial disability to her right arm, entitling her to two-hundred weeks of compensation. Additionally, concluding that the medical disability to her left arm could not further diminish her ability to perform the duties of her previous employment, the administrative judge awarded Weatherspoon additional compensation of ten percent of the maximum scheduled benefit for the left arm, or twenty weeks. In sum, the administrative judge determined that Weatherspoon's total compensation should extend for two hundred twenty weeks.

¶4. The matter was appealed by Croft Metals to the Full Commission. The Commission concluded that the claimant had failed to establish an industrial disability to her upper extremities that exceeded the medical disability assigned by her treating physician and reduced her award to forty weeks, being ten percent of the maximum period for each arm. In so doing, the Commission placed substantial reliance on evidence showing Weatherspoon's lack of diligence in pursuing alternate forms of employment after her recovery.

¶5. It is from that ruling that Weatherspoon began the appeal process that ultimately resulted in the case coming before this Court.

## ANALYSIS OF THE ISSUE

## STANDARD OF REVIEW

¶6. A judicial body reviewing an action of the Mississippi Workers' Compensation Commission has certain limitations imposed on the scope of its inquiry. The court must give substantial deference to the factual determinations of the Commission and affirm if there is substantial evidence in the record to support the Commission's findings. *General Elec. Co. v. McKinnon*, 507 So. 2d 363, 366 (Miss. 1987). However, a reviewing court is further charged with determining whether there has been an error of law by the Commission, and, as to such an assertion, there is no obligation to afford the Commission's decision any deference. *Metal Trims Indus., Inc. v. Stovall*, 562 So. 2d 1293, 1296-97 (Miss. 1990). Rather, our judicial review of errors of law is *de novo*. The case before us is framed as an issue of law since the contention is that the Commission erred in considering matters that, under prevailing law, had no bearing on the determination of the extent of Weatherspoon's disability.

## DISCUSSION

¶7. At the outset of any proceeding to determine the proper level of compensation for an injury to a scheduled member, there are two basic avenues of approach. The claimant may assert a claim that, by virtue of the residual effects of her injury, she is incapable of obtaining any form of gainful employment and that, as a result, she is entitled to 450 weeks of compensation under Section 71-3-17(a) of the Mississippi

Code. Miss. Code Ann. § 71-3-17(a) (Rev. 2000); *Smith v. Jackson Constr. Co.*, 607 So. 2d 1119, 1128 (Miss. 1992). If the claimant does not claim total inability to return to some form of work, a scheduled member injury entitles her to appropriate compensation based on the degree of permanent partial disability suffered to the member. Miss. Code Ann. § 71-3-17(c) (Rev. 2000).

¶8. One of the principal features of a disability claim under Section 71-3-17(c) is that the award is based solely on the degree of disability to the scheduled member and does not take into account the effect of that disability on the claimant's actual ability to earn wages in her post-injury condition. *Smith*, 607 So. 2d at 1125-26. This stands in contrast to a claim of total disability under Section 71-3-17(a), for which the claimant must prove she is unable to engage in any form of gainful employment. *Id*. at 1127-28.

¶9. Wage-earning ability of the individual is not a consideration in compensation for a scheduled member injury which is not totally incapacitating. Rather, the amount of compensation is derived solely by a determination of the percentage of industrial loss of use of the member. To determine the loss of use, the Commission must look not only at the degree of physical impairment assigned by the physician but also determine the degree of industrial incapacity. *Walker Mfg. Co. v. Cantrell*, 577 So. 2d 1243, 1248 (Miss. 1991). The question is whether Weatherspoon can perform the substantial acts required of her in the performance of her job at the time of injury. *McGowan v. Orleans Furniture Co.,* 586 So. 2d 163, 166 (Miss. 1991). Weatherspoon's treating physician testified that she could not return to the work she was asked to do at Croft Metals. The fact that Weatherspoon obtained employment elsewhere, even if only for short periods of time, is commendable. Her ability to perform those other jobs unrelated to Croft Metals does not reduce the extent of the industrial loss of use of her right arm. The prior range of jobs with other employers cannot be classified as part of her usual employment with Croft Metals.

¶10. If Weatherspoon is unable to perform those substantial acts of her employment with Croft Metals as a result of the injury to her right arm, then she is entitled to benefits for the total loss of the scheduled member. *Id.*; *Piggly Wiggly v. Houston*, 464 So. 2d 510 (Miss. 1985); *Richey v. City of Tupelo*, 361 So. 2d 995 (Miss. 1978); *Bill Williams Feed Serv. v. Mangum*, 183 So. 2d 917 (Miss. 1966); *McManus v. Southern United Ice Co.,* 138 So. 2d 899 (Miss. 1962). The evidence is uncontradicted that Weatherspoon cannot perform the tasks of her former job with or without any modifications, therefore no further inquiry is required. Thus, Weatherspoon has suffered a one hundred percent industrial loss of her right hand and is entitled to the maximum of two-hundred weeks compensation and twenty weeks compensation for her left hand which is equivalent to the medical impairment rating of ten percent.

¶11. This case is reversed and remanded to the Commission with instructions for the Commission to determine the total amount of permanent partial benefits due based upon two-hundred weeks for the right arm and twenty weeks for the left arm, less any credits previously paid, plus penalties and interest on any due and unpaid compensation benefits.

¶12. **THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY IS REVERSED AND THIS CAUSE IS REMANDED TO THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. THE COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.**

    **KING, P.J., BRIDGES, LEE, IRVING, AND MYERS, JJ., CONCUR. McMILLIN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J., THOMAS AND CHANDLER, JJ.**

McMILLIN, C.J., DISSENTING:

¶13. I respectfully dissent. The point of disagreement I have with the majority's resolution of this case is that I believe it to take an improperly narrow view of what is to be considered in discovering the claimant's "usual employment" for purposes of assessing the extent of her claimed scheduled member industrial disability.

¶14. The majority holds that the job being performed at the time of injury is the claimant's "usual employment" and that, once that particular job is identified, "no further inquiry is required"in regard to the nature of the claimant's work history in order to properly assess the extent of the claimant's industrial, as opposed to functional or medical, disability.

¶15. The proof in this case showed that Weatherspoon had been engaged in a number of different types of economic pursuits over the course of her career, not all of which involved repetitive-motion type factory assembly work. She had, in fact, only been employed by Croft Metals in the screen assembly process for approximately four months at the time of her injury. Her immediately preceding job had been as a bus driver and had lasted about two years.

¶16. It is my view that, in such a case as this, the inquiry into the impact on Weatherspoon's ability to "perform the substantial acts of her usual employment" must look beyond the particular job she happened to be holding at the time her injury manifested itself.

¶17. The competing concepts of medical versus industrial disability to a scheduled member, it must be remembered, are not to be discovered in the provisions of the workers' compensation statute dealing with scheduled member injuries. Miss. Code Ann. § 71-3-17 (Rev. 2000). Rather, these are court-created concepts growing out of the Mississippi Supreme Court's efforts to interpret the provisions of the statute. *Robinson v. Packard Elec. Div., Gen. Motors Corp.*, 523 So. 2d 329, 331 (Miss.1988). In defining an industrial disability to a scheduled member, it would, therefore, have been within that court's prerogative to limit the inquiry to the particular job being performed at the time of injury as the majority now seems to have done.

¶18. The supreme court, however, did not define an industrial disability in such a narrow manner. Instead, it chose to use the phrase "usual employment," which, depending on the work history of the claimant, could be something different from the particular job being performed at the time of injury. Certainly, if the injured claimant has a long history at the same or essentially identical jobs, then "usual employment" would be synonymous with the job being performed at the time of injury. However, in other instances the answer does not appear to be so clear. By way of example, a worker with a ten year career as a school teacher who takes on a brief stint as a manual laborer to earn funds for some special purpose and is injured the first day on the job ought not, in my view, to necessarily have his industrial disability calculated solely by assessing his ability to continue to wield a shovel.

¶19. This Court has previously indicated its understanding - which it now apparently is prepared to abandon - that the inquiry into what constitutes an injured worker's usual employment in a scheduled member case can involve something more than simply identifying the job being performed at the moment of injury. In *Meridian Professional Baseball Club v. Jensen*, No. 1999-WC-02093-COA, 2000 WL 1499455, at *4-5 (¶¶12-16) (Miss. Ct. App. Oct. 10, 2000), this Court concluded that, in the appropriate

case, the inquiry as to the extent of a claimed industrial disability to a scheduled member injury must extend beyond the fact of the job being performed at the time of injury. In explicit language that seems to fly directly in the face of the majority's opinion in this case, this Court said in *Jensen*:

> We are convinced, based on the decisions of the Mississippi Supreme Court, that a claimant is not entitled to benefits based on a total loss of use of a scheduled member simply because he can no longer perform the duties of the job in which he was employed at the time of his injury.

*Id*. at (¶16).

¶20. Admittedly, the *Jensen* case is now pending before the Mississippi Supreme Court upon the issuance of a writ of certiorari by that court, but the issuance of such a writ does not, of itself, indicate a conclusion by the supreme court that our understanding of the applicable law was in error. Thus, though *Jensen* is not precedent because it is not a final decision, I would have thought that it represented this Court's best understanding of the concepts necessary to resolve a dispute over the extent of an injured worker's claim, and I find nothing in this case that warrants an abandonment of that line of reasoning.

¶21. There is at least arguable support for a broader inquiry into what constitutes a claimant's "usual employment" in one case cited by the majority. In *Piggly Wiggly v. Houston*, 464 So. 2d 510, 511 (Miss. 1985), the supreme court defined the duties of Houston's job at the time of injury and found it to involve lifting requirements beyond Houston's post-injury abilities. However, the court did not stop there, but went on to note that "[f]or the last twenty years of Mrs. Houston's employment history, she has had jobs involving lifting." *Id.* Were the inquiry as narrow as the majority now contends, there would have been no point for the court to articulate and - we must assume - consider her job history beyond that existing at the time of injury in assessing the extent of her industrial disability.

¶22. I would not so abruptly abandon our prior reasoning in *Jensen*. Though a decision path that potentially involves an inquiry into a claimant's work history broader than simply the job held at the time of injury makes the determination of "usual employment" a more difficult endeavor, I remain convinced that it is one more likely to lead to a reasoned and rational result.

¶23. In this case, I would hold that the Commission erred in focusing entirely on Weatherspoon's post-injury efforts to seek other employment to determine the extent of her industrial disability. However, I would also hold that the administrative judge's sole focus on the duties being performed at the time of injury - which the majority now adopts by rendering a judgment for 220 weeks' compensation - was likewise in error. I would remand for further evidentiary inquiry into Weatherspoon's work history, after which a more reasoned assessment could be made as to the affect of her somewhat minimal permanent disabilities on her ability to perform in the range of jobs that realistically constituted her "usual employment."

**SOUTHWICK, P.J., THOMAS AND CHANDLER, JJ., JOIN THIS SEPARATE WRITTEN OPINION.**